**Joseph BATTISTE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FOX CHASE CANCER CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 12, 1995.

Decided June 20, 1995.

Jeffrey V. Matteo, for petitioner.

Harold Rush–Lloyd, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

PELLEGRINI, Judge.

Joseph Battiste (Claimant) petitions for review of the order of the Worker's Compensation Appeal Board (Board) affirming the referee's termination of Claimant's benefits and awarding penalties to Claimant for the failure to pay all of his medical expenses pursuant to The Pennsylvania Worker's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

Claimant worked for Fox Chase Cancer Center (Employer) as a CAT scan and x-ray technician. On December 3, 1991, the chair he was sitting on broke apart and he fell to the floor sustaining injuries to his neck and low back. Claimant filed a claim petition for his injury. In April of 1992, the parties stipulated and it was ordered in a referee's decision that Claimant was entitled to total disability benefits, including the payment of all reasonable and necessary medical bills.

On May 8, 1992, Employer filed a Petition for Termination alleging that all of Claimant's disability had ceased as of April 20, 1992. In addition to denying the allegations of the Termination Petition, Claimant filed a Petition for Penalties alleging Employer had failed to timely pay all of his medical expenses. Claimant's petition was amended to include a Petition for Review of the nature of his injuries alleging a psychological injury.

At the hearing before the referee, Employer presented the medical testimony of Andrew Newman, an orthopedic surgeon. Dr. Newman testified that he examined Claimant on April 15, 1992, and also reviewed an MRI taken on January 23, 1992, and Claimant's history. Dr. Newman testified that Claimant arrived for the examination walking with a cane and in a crouched position and that he appeared in great distress even with the simplest, slightest maneuvers. Dr. Newman stated that exclamations of pain of that magnitude usually result from joint dislocation or fracture and absent those causes, he doesn't know of any condition that would cause that amount of discomfort. The physical manipulations performed by Dr. Newman revealed no anatomical basis for the pain complained of. Claimant complained of pain in unrelated areas during certain tests, Dr. Newman stated. In conclusion, Dr. Newman opined that from an orthopedic standpoint, Claimant was fully recovered from his injury of December of 1991 and that he could return to his prior work without restrictions. Dr. Newman noted that Claimant appeared psychologically troubled and he felt Claimant could not return to work due to those problems, however he stated that this comment went beyond his specialty. Employer did not present a medical witness in relation to Claimant's psychological condition.

Employer also presented the testimony of Lloyd Brown, a private investigator. Brown identified a written report of his surveillance of Claimant and a videotape of the surveillance he conducted from May 18, 1992 through May 22, 1992. The report and videotape revealed that while on his honeymoon, Claimant drove a moped, walked the stairs of a lighthouse, packed and wore a backpack during shopping, and loaded his car with large pieces of luggage.

In response, Claimant also testified before the referee stating that he continues to have neck, back and leg pain, anxiety, depression, insomnia, headaches, and a lack of concentration. He testified that because of these problems he doesn't believe he can return to work. To medically support that his conditions were caused by his work-related injury, Claimant called Corey Ruth, an orthopedic surgeon, and Barry Kayes, his psychologist. Dr. Ruth testified that he found restricted motion and spasm in Claimant's low back. Dr. Ruth diagnosed Claimant with a bulging and degenerative disc with left lumbar radiculopathy. He testified that this condition was a result of the work-related injury and that Claimant continued to be totally disabled. Dr. Ruth admitted on cross-examination that the MRI studies and x-rays on Claimant were normal and did not establish any radiculopathy.

Dr. Kayes testified that he had first seen Claimant in January of 1992. At that time,

Claimant related unexplained sadness, nervousness, loss of emotional control, headaches, vertigo and fear and reported that these symptoms appeared after his work-related accident in December of 1991. Dr. Kayes diagnosed Claimant with "psychological factors affecting physical conditions"[1] including elements of depression and anxiety and also some features of post-traumatic stress disorder, although he would not make a diagnosis of post-traumatic stress disorder to a reasonable degree of medical certainty. Dr. Kayes testified that the "psychological factors affecting physical condition" was related to the work-related injury and the subsequent events, and that the condition would prevent Claimant from returning to his pre-injury position. Dr. Kayes conceded that this condition was premised upon the existence of an underlying injury or physical condition.

The referee found Dr. Newman to be more credible and persuasive than Dr. Ruth. He also found the testimony of Dr. Kayes and Claimant to be unpersuasive. The referee determined that Claimant was fully recovered from his work-related injury as of April 15, 1992, and that any further alleged disability, either physical or psychological, is unrelated to the work-related incident. Granting Employer's termination petition, the referee also found that Employer failed to pay some of Claimant's medical bills[2] in a timely manner, and directed Employer to pay a penalty and the litigation expenses relating to that petition.[3] The referee specifically stated that the surveillance evidence was admissible as a supplement to the competent medical evidence of Dr. Newman. Claimant appealed the termination to the Board.

■ Affirming the referee, the Board stated that Dr. Newman's testimony was competent medical evidence and the referee did not err in relying on the surveillance evidence to supplement Dr. Newman's opinion. The Board found there was substantial evidence for the finding that Claimant was fully recovered from his work-related injury. Claimant then filed this appeal.[4]

■ Claimant argues that Employer did not meet its burden of proof because there was evidence of continuing disability due to his psychological problems that Employer did not prove was caused by something other than the work-related injury. An employer seeking termination of a claimant's worker's compensation benefits has the burden of proving by substantial evidence that all of the claimant's work-related disability has ceased. *Kerns v. Workmen's Compensation Appeal Board (Colt Resources, Inc.)*, 149 Pa.Commonwealth Ct. 268, 613 A.2d 85 (1992). Where current disability exists and the employer seeks to terminate benefits, the employer has the burden of proving independent cause or the lack of a causal connection between the continuing disability and the work-related injury. *Gumro v. Workmen's Compensation Appeal Board*, 533 Pa. 461, 626 A.2d 94 (1993). This burden is considerable because disability is presumed to continue until demonstrated otherwise. *Giant Eagle v. Workmen's Compensation Appeal Board (Chambers)*, 161 Pa.Commonwealth

---

1. "Psychological Factors Affecting Medical Condition" is described in the Diagnostic and Statistical Manual of Mental Disorders (fourth edition, p.p. 675–678) as psychological factors which adversely affects a general medical condition either by (1) influencing the course of the medical condition by the development or exacerbation of, or delayed recovery from the medical condition in a close temporal association with the psychological factors, (2) interfering with the treatment of the medical condition, (3) constituting an additional health risk, or (4) precipitating or exacerbating symptoms through stress-related physiological responses. The manual also states that this category should be reserved for those situations in which the psychological factors have a clinically significant effect on the course or outcome of the general medical condition or place the individual

at a significantly higher risk for an adverse outcome.

2. The referee disallowed the medical bills for Dr. Kayes and other psychological treatment.

3. The referee implicitly denied Claimant's claim for his psychological problems and that determination was not appealed.

4. On appeal, our standard of review of a Board order is limited to determining whether there has been a constitutional violation, or an error of law, or whether the necessary findings of fact are supported by substantial evidence. Administrative Agency Law, 2 Pa.C.S. § 704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

Ct. 35, 635 A.2d 1123 (1993); *County of Dauphin v. Workmen's Compensation Appeal Board (Davis)*, 136 Pa.Commonwealth Ct. 140, 582 A.2d 434 (1990), *petition for allowance of appeal denied*, 528 Pa. 614, 596 A.2d 160 (1991). The burden never shifts to the claimant in a termination proceeding to prove the existence of a causal connection between his disability and his injury. *Giant Eagle; Iacono v. Worker's Compensation Appeal Board (Chester Housing Authority & PMA Group)*, 155 Pa.Commonwealth Ct. 234, 624 A.2d 814 (1993), *aff'd per curiam*, 536 Pa. 535, 640 A.2d 408 (1994).

In *Giant Eagle*, although the claimant was originally injured from an electrical shock to her right hand, she later complained of cervical problems and neck pain. On a termination petition, the claimant's treating physician initially testified for the employer that the neck and cervical problems were not related to the work-injury. The same physician later testified on claimant's behalf that after the benefit of more tests, he found a disc out of place and surmised that the neck pain and cervical injury resulted from the work-related incident. Although claimant's medical testimony on the cause of the cervical problems was equivocal, the employer did not present unequivocal testimony that the electric shock was not the cause of the cervical problems. We held that, because it was employer's burden of proof, termination was improper even though there was insufficient evidence to show the later arising cervical problems were related to the work-related injury. *Id.* at 45, 635 A.2d at 1128.

▮▮ Just like secondary physical problems, psychological symptoms that follow a physical injury can be a compensable consequence of the original work-related injury. *Sibrava v. Workmen's Compensation Appeal Board (Trans World Airlines)*, 113 Pa.Commonwealth Ct. 286, 289, 537 A.2d 75, 77 (1988); *Chamberlain Manufacturing Corp. v. Workmen's Compensation Appeal Board*, 46 Pa.Commonwealth Ct. 225, 405 A.2d 1375 (1979). Like in *Giant Eagle*, which involved physical injuries only, in a termination petition the burden is on the employer to show a lack of work-related causation where the claimant maintains that she remains disabled due to an emotional or psychological condition which she claims stems from the original injury. *School District of Philadelphia v. Workmen's Compensation Appeal Board (Coe)*, 163 Pa.Commonwealth Ct. 89, 639 A.2d 1306 (1994). Even though the burden to prove causation for a psychological injury is on the claimant in other petitions, *see, e.g., Pitkavish v. Workmen's Compensation Appeal Board (Pullman Standard)*, 163 Pa.Commonwealth Ct. 185, 640 A.2d 494 (1994) (review of medical bills), in a termination petition the burden is employer's. *See Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990). In *Nelson v. Workmen's Compensation Appeal Board (Elliott Company)*, 106 Pa.Commonwealth Ct. 301, 525 A.2d 1284 (1987), a claimant who injured her back and head claimed for the first time during proceedings on a termination petition that she had an additional psychiatric disability. We held that the employer had the burden to show as to the current psychiatric disability the lack of a causal connection to the compensable physical injury. *See also Hoge v. Workmen's Compensation Appeal Board (Sutton Printing Company)*, 168 Pa.Commonwealth Ct. 43, 649 A.2d 151 (1994), *petition for allowance of appeal denied*, — Pa. ——, 655 A.2d 994 (1995).

▮▮ In this case, Dr. Newman stated that from an orthopedic standpoint, Claimant could return to his prior work. However, he also stated that Claimant could not return to work due to his anxiety and deep mental problems, but that those problems were beyond his expertise. This opinion is reflected in his written report.[5] Employer's medical

---

5. In relation to Claimant's psychological problems, Dr. Newman's report stated:

This patient obviously has significant anxiety and probably more deep mental problems. This certainly comes through in the various reports in which no physician has really, as far as I can tell, found any significant neurologic deficit in this patient. His actions are totally bizarre....

All the patient's actions and his demeanor show an obviously disturbed patient, but certainly, orthopedically, there is absolutely nothing positive in this examination, from an objective standpoint....

evidence supported the fact that Claimant had a continuing psychological disability that prevented him from returning to work. Although Dr. Newman's testimony in no way causally related the psychological disability to Claimant's work-related injury, because it is Employer's burden to prove that any remaining disability is not causally connected to the work-related injury, the Employer did not meet its burden of proof that Claimant was fully recovered.[6] Employer had the burden of proving independent cause or the lack of a causal connection between the continuing psychological disability, admitted by it's medical witness, and the work-related injury. *Gumro.* Because Employer presented no evidence to meet this part of its burden of proof, the referee erred in granting termination and we must reverse the Board's decision.[7]

■ We recognize that a reversal leads to the somewhat anomalous result that Claimant does not receive medical payments for psychological treatment because he did not establish the work-relatedness of his claim, while Employer's petition is denied because it did not establish that the psychological problems were not causally related to the work injury. Remember, though, there were

separate petitions with separate burdens of proof which neither party bringing the petition sustained. When, as here, that occurs the status quo is maintained.

■ Claimant also contends that the referee erred in not assessing counsel fees against Employer for unreasonable contest pursuant to Section 440 of the Act, 77 P.S. § 996.[8] Claimant argues that Employer did not offer any defense as to its Petition for Penalties and claim for psychological injuries. Claimant also argues that Employer's pursuit of the termination petition was an unreasonable contest because it did not meet its burden of proof. Although Employer did not address this issue in its brief, it is clear from the record that it did not present any evidence in response to Claimant's claim for the psychological problems and that as to the penalty petition, it presented evidence that most of the bills were paid, albeit not in a timely manner. The referee, although awarding penalties and the costs of litigation related to those penalties, did not address whether Employer presented a reasonable contest.

■ The general rule is that a prevailing claimant is entitled to an award of attorney fees unless an employer had a rea-

---

On the basis of the examination from an orthopedic standpoint, he can go back to full duties, but, I can tell you very frankly that with the mental state that this patient is in he will not be able to return to work anytime in the near future, but, that is for a specialty outside my own to determine a course of treatment. (Original Record, Dr. Newman's report p. 4).

6. Claimant relies on *County of Dauphin* and the cases following it to argue the burden was on Employer. Although *County of Dauphin* generally states that the burden is on the employer in termination petitions, it is not on all fours with the instant case because in that case the employer's medical expert conceded that the claimant remained disabled as a result of a "functional overlay," an emotional or mental abnormality overlaying or obscuring the original work-related injury. Because the employer's medical witness testified that the remaining disability was causally related to the work-related injury, that testimony would have met the burden of proving causation no matter who had the burden of proof.

7. We need not address whether the capricious disregard standard applied to Dr. Kayes' testimony, or whether the referee erred in that regard, because we hold that Employer failed to meet its

burden of proof. Neither do we have to address Claimant's argument that the surveillance videotape was an invasion of his privacy.

8. Section 440(a) of the Act provides:

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe ... in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

The reasonableness of a contest is a legal conclusion based upon the facts as found by the referee and is reviewable by this court. *Rutherford v. Workmen's Compensation Appeal Board (Philadelphia Electric Company)*, 168 Pa.Commonwealth Ct. 73, 649 A.2d 166 (1994).

sonable basis for contesting liability. *County of Delaware v. Workmen's Compensation Appeal Board (Thomas)*, 168 Pa.Commonwealth Ct. 231, 649 A.2d 491 (1994). A reasonable contest may be established where medical evidence is conflicting or is susceptible to contrary inferences and where there is an absence of evidence that the employer's contest was frivolous or filed for purposes of harassment. *Id.* The decision whether to assess attorney's fees against a party for engaging in an unreasonable contest is entirely within the referee's discretion. *Rutherford.*

As to the petition for penalties, Employer presented only documentary evidence of the payment of medical bills and that evidence, as found by the referee, supported Claimant's argument that the medical bills were not paid in a timely manner. Because Employer did not present defensive evidence and because Claimant requested attorney fees in its petition, we believe Employer presented an unreasonable contest as to the petition for penalties. However, because the referee did not make any findings as to an unreasonable contest or as to the work performed by Claimant's counsel, a remand is required as to the award of attorney fees. *Pieretti v. Workmen's Compensation Appeal Board (Denny's, Inc.)*, 135 Pa.Commonwealth Ct. 309, 581 A.2d 990 (1990); *Beth–Allen Ladder Co. v. Workmen's Compensa-*

*tion Appeal Board (Mills)*, 53 Pa.Commonwealth Ct. 323, 417 A.2d 854 (1980). Additionally, we will remand for the referee to determine whether Claimant requested attorney fees as to the termination petition [9] and if so, whether Employer presented a reasonable contest as to that petition and as to the claim petition. *Pieretti.*

Accordingly, we reverse the decision of the Board and reinstate Claimant's benefits because Employer did not meet its burden of proof on the petition for termination. We also remand the case for the referee to make findings concerning the award of attorney fees under Section 440 of the Act.

### ORDER

AND NOW, this 20th day of June, 1995, the order of the Workmen's Compensation Appeal Board, dated October 18, 1994, No. A93–2111, is reversed, and the case is remanded for a determination of an appropriate award of attorney fees.

Jurisdiction relinquished.

---

9. We are unable to address whether Claimant requested attorney fees as to the petition for termination because the original record did not include transcripts from all of the hearings before the referee.