**Glenn YOUNG, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NEW SEWICKLEY POLICE DEPARTMENT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 31, 1998.

Decided Aug. 17, 1999.

Thomas W. Minett, New Castle, for petitioner.

Dale A. Cable, Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Glenn Young (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) which, in reversing the decision of a Workers' Compensation Judge (WCJ), denied his claim petition for a "mental/mental" injury.[1]

Claimant had worked for the New Sewickley Township Police Department (Employer) as a police officer for twenty-two years. On February 12, 1992, he was directed to serve an arrest warrant on Michael Kuvinka in a domestic violence case. When Claimant and another officer arrived at the Kuvinka residence, Kuvinka's mother gave the officers permission to enter the home. As the officers were explaining the arrest warrant to Mrs. Kuvinka, Kuvinka rushed forward pointing a .44 caliber magnum handgun approximately three to five feet away from Claimant's face. Kuvinka also had a .22 caliber revolver pointed at his own head, shouted obscenities and repeatedly threatened to kill Claimant and himself. After several minutes had passed, Mrs. Kuvinka pleaded with her son to drop his weapons. Kuvinka momentarily turned his head in the direction of his mother and Claimant dove at him. A physical altercation ensued, with both men wrestling for control of the weapons. Claimant ultimately subdued Kuvinka and took him into custody.

On September 27, 1993, approximately nineteen months after the incident with Kuvinka, Claimant filed a claim petition alleging that he suffered a work-related psychological injury that resulted in post-traumatic stress disorder as a result of the

---

1. The term "mental/mental" injury was coined by Workmen's Compensation Referee Irvin Stander to describe psychic injuries caused by psychological elements. Mental/mental injuries are compensable under the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, if all the elements needed to establish such a claim are present. *Volterano v. Workmen's Compensation Appeal Board,* 536 Pa. 335, 639 A.2d 453 (1994).

events that occurred at the Kuvinka house. A WCJ held hearings wherein Claimant presented the deposition testimony of Dr. James Huha, a forensic psychologist, and Dr. Michael Wusylko, a physician board certified in internal medicine, in support of his petition. Dr. Huha testified that he first examined Claimant on May 5, 1992, at which time he diagnosed Claimant with post-traumatic stress disorder. Dr. Huha's diagnosis was based upon symptoms that Claimant exhibited, including his experiencing a catastrophic event; re-experiencing the event in the form of nightmares and flashbacks; exhibiting signs of avoidance of stimuli associated with the trauma; feelings of detachment and estrangement from others; sleep disturbance, irritability and outbursts of anger; and hypervigilance. Dr. Huha treated Claimant with desensitization techniques and cognitive restructuring until October 18, 1993, at which time Claimant discontinued treatment because he was concerned about unpaid medical bills. It was Dr. Huha's opinion that Claimant is in need of further treatment. Employer did not present any testimony or exhibits.

The WCJ found the testimony of Dr. Huha to be credible and granted Claimant's petition based, in part, on the following:

> Serving an arrest warrant which results in a police officer being held at gunpoint, even with the possibility of losing his life is, in theory, foreseeable and not an abnormal part of police work. However, the claimant has been a police officer for twenty-two years and has never had such an experience. He is a police man in New Sewickley township, not a large urban area where the police force is more trained and experienced in dealing with violent criminals. Under the facts and circumstances of this case,

the claimant's work situation was abnormal.

(WCJ's Opinion at 3.)

Employer appealed to the Board, and the Board reversed, holding that the WCJ erred in concluding that Claimant had met his burden of proving abnormal working conditions. The Board's determination was based upon Claimant's testimony that his duties included responding to all types of situations, including everything from traffic stops to homicides, suicides, burglaries, robberies and domestic violence. The Board also relied on Claimant's testimony that, although he had never before been involved in anything like the situation that he faced on February 12, 1992, he had received training for this type of situation, and it was foreseeable that he could find himself in an armed stand-off:

> Indeed, Claimant admitted that he knew he could be placed in a life-threatening situation on any given day, and that this was normal for a police officer. . . .
>
> Under these circumstances, Claimant's experience on February 12, 1992 was not an 'unusually stressful event' which made 'his job more stressful than it had been.' . . . He therefore did not establish that he was subjected to abnormal working conditions.

(Board's Decision at 8.) (Citation omitted.) This appeal followed.

On appeal to this Court,[2] Claimant argues that the Board erred as a matter of law in concluding that he did not suffer a compensable injury and that he did not meet his burden of proving abnormal working conditions to recover for a mental/mental injury.

Employer responds by arguing that, because the job of a police officer is inherently highly stressful, it is to be expected that a police officer might encounter the same situation faced by Claimant, even though it

---

2. Our standard of review is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether necessary findings of fact are unsupported by substantial evidence.

*City of Scranton v. Workmen's Compensation Appeal Board (Hart),* 136 Pa.Cmwlth. 483, 583 A.2d 852 (1990), *petition for allowance of appeal denied,* 528 Pa. 625, 597 A.2d 1154 (1991).

is not common, and therefore, the Board's decision is correct.

To recover for a psychological injury caused by a mental stimulus, or a "mental/mental" injury, the claimant must prove either: (1) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time; or (2) that abnormal working conditions over a longer period of time caused a psychiatric injury. *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher)*, 546 Pa. 27, 682 A.2d 1257 (1996). The "abnormal working condition" approach is a method to distinguish psychological injuries which are compensable, because the necessary causal relationship between a person's employment and his mental disability has been established, from those psychological injuries which are not compensable and arise from an employee's subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990). Thus, for Claimant to recover, he must prove by objective evidence that he has a psychiatric injury and that such injury is more than a subjective reaction to normal working conditions. Furthermore, psychic injury cases are fact specific and are to be considered in the context of the specific employment.[3] *Id.*

We have recognized that many jobs are, by their nature, highly stressful, including the job of police officer. For a high-stress working environment to constitute a legally sufficient abnormal working condition, this Court has determined that:

'there must be a finding either that claimant's work performance (as distinguished from a mere job description) was unusually stressful for that kind of job or a finding that an unusual event occurred making the job more stressful than it had been.'

*City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852, 856 (1990), *petition for allowance of appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991) (*quoting Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board (DeMay)*, 87 Pa.Cmwlth. 558, 487 A.2d 1053, 1059 (1985) (Doyle, J., dissenting and concurring)). Thus, although a claimant in a normally highly stressful working environment, such as an air traffic controller or police officer, may not have a higher burden of proof, it is often more difficult to establish abnormal working conditions in a job that is, by its nature, highly stressful; meaning, that the claimant must establish that the occurrence which disabled him, or the incident which caused his mental injury, is so much more stressful, and abnormal, in a job that is already highly stressful as a normal incidence of that position.

Although the facts of this case are closely analogous to the facts of our decision in *City of Philadelphia v. Civil Service Commission of the City of Philadelphia*, 712 A.2d 350 (Pa.Cmwlth.1998), wherein we granted benefits to an officer who was involved in a similar stand-off situation, we are bound by the recent decision of our Supreme Court in *City of Philadelphia v. Workers' Compensation Appeal Board (Brasten)*, 556 Pa. 400, 728 A.2d 938 (1999), which we believe overrules *City of Philadelphia sub silentio*. In *Brasten*, our Supreme Court affirmed this Court's holding that the indictments, investigations and media attention arising out of a police officer's shooting of a suspect were *not* abnormal working conditions and, accordingly, denied benefits to the officer.

In *Brasten*, a police officer shot and killed a suspect who had barricaded himself in a building. The officer himself later became the subject of a criminal investigation by the Philadelphia Police Department and the District Attorney's office,

---

**3.** Whether a claimant has established that his work-related injury was the result of an extraordinary event or an abnormal working condition is a mixed question of fact and law fully reviewable by this Court on appeal. *Squilla v. Workmen's Compensation Appeal Board (Marple Township)*, 146 Pa.Cmwlth. 23, 606 A.2d 539 (1992).

which resulted in the officer being indicted for voluntary manslaughter, involuntary manslaughter, and reckless endangerment of another person. The officer was eventually tried and acquitted, but his case not only attracted a great deal of media attention, it was also the subject of public demonstrations. The officer filed a petition requesting workers' compensation benefits for psychic injuries suffered as a result of the work incident which led to the criminal investigation. A WCJ concluded that the shooting incident was a normal working condition for a Philadelphia police officer, but that the subsequent indictments and negative publicity were abnormal working conditions and, accordingly, granted the officer's petition. The Board affirmed.

On appeal to this Court, we reversed the WCJ's decision and held that the indictments, investigations and media attention did not constitute abnormal working conditions and, rather, that the officer's psychological injury was a subjective response to normal working conditions as a police officer. An evenly divided (3–3) Supreme Court affirmed our decision *per curiam;* Justice Zappala filed an opinion in support of affirmance, in which Chief Justice Flaherty and Justice Cappy joined, and Justice Nigro filed an opinion in support of reversal in which Justice Castille and Justice Newman joined.

The opinion in support of affirmance concluded that the shooting incident itself was a normal working condition, and further, that the grand jury investigation, the indictment and trial, as well as all of the media attention associated with a high profile case such as the one there in issue, also did not constitute abnormal working conditions:

In the present case, the investigation and trial were the stimulus for [the officer's] injury.... Being indicted in a homicide case is certainly traumatic, but I would hold that even if the events occurring after the shooting were abnor-

mal, they were, at best, tangentially related to [the officer's] employment. *Brasten,* 728 A.2d at 940.

In the opinion in support of reversal, Justice Nigro relied upon the standard of determining an abnormal working condition in a high-stress working environment, as defined by this Court in *Hart, i.e.,* that there must be a finding either that claimant's work performance (as distinguished from the mere job description) was unusually stressful for *that* kind of job, or a finding that an unusual event occurred making the job more stressful than it had been. Justice Nigro concluded:

Thus, the fact that the encounter of June 1992 was the most perilous position [the officer] had ever been placed in over the course of his twenty years on the force merely makes the experience **subjectively** abnormal for [the officer], but does not rise to the level of "abnormal working conditions." Similarly, the fact that, following the killing of the suspect, [the officer] learned that he had shot someone who was technically unarmed, compounding the stress, is also **a subjective reaction** to quite foreseeable circumstances of the job. Nonetheless, the events **following** the shootout which unfolded over the course of a year are of a substantially different character.

*Id.* at 942 (emphasis added).

Although Justices Nigro, Castille and Newman would hold that the events **following** the police action were abnormal working conditions, they joined Justices Zappala and Cappy and Chief Justice Flaherty in finding that the extremely stressful police action preceding the indictment of the police officer which resulted in the death of an individual was **not** an abnormal working condition for a police officer. Therefore, what we can distill from *Brasten* is that all six Justices agreed that the shooting incident itself was **not** an abnormal working condition for a police officer, and the logical conclusion of that distillation is that, if the events in *Brasten* were not abnormal working conditions,

then the facts and events in this present appeal also cannot be an abnormal working condition in the view of our Supreme Court.

 We conclude that, under the reasoning of *Brasten,* the evidence presented here is insufficient to prove that the stand-off event was an abnormal working condition for a police officer, where certain stressful and even life-threatening events and occurrences are expected and anticipated due to the nature of the employment, regardless of where the officer is employed or for how long the officer has been employed. The fact that Claimant had never before been involved in the type of stand-off situation which occurred on February 12, 1992, at any previous time in his career merely makes the experience subjectively abnormal for Claimant.

Claimant has argued in the alternative that the Board erred by failing to award benefits for a mental/*physical* injury based upon Claimant's physical conditions, including sweating, crying, and uncontrollable bowel movements. However sympathetic we might be for the Claimant's condition, in order to recover for a mental/physical injury, a claimant must prove two elements: (1) a psychological stimulus which causes a physical injury which continues after the psychological stimulus is removed; and (2) a disability or loss of earning power, caused by the physical condition, rather than by the psychological stimulus; in other words, the claimant must not be able to perform his or her pre-injury job because of the resulting physical injury which continues after the psychological stimulus is removed. *Old Republic Insurance Company v. Workers' Compensation Appeal Board (Mascolo),* 726 A.2d 444 (Pa.Cmwlth.1999). Here, Claimant has not presented any evidence that the physical symptoms he experienced were anything other than manifestations of the stress that he experienced, and he failed to demonstrate that, absent the stress, the physical symptoms would con-

tinue and prevent him from performing his time-of-injury position.

Accordingly, the decision of the Board is affirmed.

### ORDER

**NOW,** August 17, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

Judge KELLEY concurs in the result only.